AO 106 (Rev. 04/10) Application for a Search Warrant



FILED
RICHARD W. NAGEL
CLERK OF COURT

2020 MAR 18 AM 10: 39

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
EAST DIV. COLUMBUS

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
One black Samsung Galaxy J7 cellular phone, serial number R58K65KA2YH that was seized from the person of Cayceallen Schneider, and is currently held in secure evidence storage at the Federal Bureau of Investigation, Cincinnati Field Office, Columbus Resident Agency

)
)
)
)
)
)

Case No.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment B, incorporated herein by reference.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment A, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2422(b) | Coercion/enticement of a minor to engage in illegal sexual activity, via a means/facility of interstate commerce |
| 18 U.S.C. 2423(b) | Travel in interstate commerce with intent to engage in illicit sexual conduct |

The application is based on these facts:

See attached affidavit incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Andrew D. McCabe
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-18-20

_____
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | |
| One black Samsung Galaxy J7 cellular phone, | ) | case no. |
| serial number R58K65KA2YH that was seized | ) | |
| from the person of Cayceallen Schneider, and is | ) | magistrate judge |
| currently held in secure evidence storage at the | ) | |
| Federal Bureau of Investigation, Cincinnati | ) | |
| Field Office, Columbus Resident Agency | ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Andrew D. McCabe, a Special Agent with the Federal Bureau of Investigation (FBI),

being duly sworn, hereby depose and state:

### I.    EDUCATION TRAINING AND EXPERIENCE

1.      I am a Special Agent with the FBI assigned to the Cincinnati Division, Cambridge
Resident Agency and I have been a Special Agent since September 2010. During my tenure as an
FBI Special Agent, I have investigated numerous crimes including, but not limited to, bank
robbery, drug trafficking, racketeering, kidnaping, violent extremism, and crimes against children.

2.      While performing my duties as a Special Agent, I have participated in various
investigations involving computer-related offenses and have executed search warrants, including
those involving searches and seizures of computers, digital media, software, and electronically
stored information. I have received both formal and informal training in the detection and
investigation of computer-related offenses. As part of my duties as a Special Agent, I investigate
various criminal child exploitation offenses, including violations of 18 U.S.C. §§ 2422(b) and
2423(b).

3.      As a Special Agent, I am authorized to investigate violations of the laws of the
United States and to execute warrants issued under the authority of the United States.

### II.    PURPOSE OF THE AFFIDAVIT

4.      I make this affidavit in support of an application for a search warrant for the
SUBJECT DEVICE, a black Samsung Galaxy J7 cellular phone, bearing serial number
R58K65KA2YH, and IMEI 354805091157010, which was seized from the person of Cayceallan
SCHNEIDER, and is currently held in secure evidence storage at the FBI, Cincinnati Field Office,
Columbus Resident Agency.

1

5.     The facts set forth below are based upon my own personal observations, investigative reports, and information provided to me by other law enforcement agents. I have not included in this affidavit all information known by me relating to the investigation. I have set forth only the facts necessary to establish probable cause for a search warrant of the SUBJECT DEVICE. I have not omitted any facts that would negate probable cause.

6.     The SUBJECT DEVICE to be searched is more particularly described in Attachment A, for the items specified in Attachment B, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2422(b) and 2423(b) – coercion or enticement of a minor(s), and travel in interstate commerce to engage in illicit sexual conduct. I am requesting authority to search the entire content of the SUBJECT DEVICE, wherein the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

III.    **APPLICABLE STATUTES AND DEFINITIONS**

7.     Title 18, United States Code, Section 2422(b), makes it a federal crime for any person to knowingly use a means of interstate commerce to persuade, induce, entice, or coerce or attempt to persuade, induce, entice or coerce, any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person may be charged with a crime.

8.     Title 18, United States Code, Section 2423(b), makes it a federal crime for a person to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person.

9.     Pursuant to Ohio Revised Code § 2907.04, it is a felony under the laws of Ohio for any person who is eighteen years of age or older to engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows that other person is thirteen years of age or older but less than sixteen years of age. Sexual conduct is defined pursuant to O.R.C. § 2907.01 to include vaginal intercourse, anal intercourse, fellatio, cunnilingus, and the insertion of any part of the body or any instrument into the vaginal or anal opening of another.

10.     As it used in 18 U.S.C. § 2423, the term "illicit sexual conduct" is defined in 18 U.S.C. § 2423(f) as: a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States.

11.     As it is used in 18 U.S.C. § 2246(2)(B) the term "sexual act" is defined as: (A) contact between the penis and the vulva or the penis and the anus, (B) contact between the mouth

2

and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight of the anal or genital opening of another by a hand or finger with an intent to arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of any person.

## IV. BACKGROUND REGARDING CELLULAR PHONES, THE INTERNET AND MOBILE APPLICATIONS

12.     I know from my training and experience that computer hardware, computer software, and electronic files ("objects") may be important to criminal investigations in two distinct ways: (1) the objects themselves may be evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of a crime, contraband, and instrumentalities and/or fruits of crime.

13.     Based on my training and experience, I use the following terms to convey the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile/cellular/smart phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, modern wireless/cellular phones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Cellular "smart" phones are essentially mini computers that can store anywhere from 16GB to 256GB of data. These phones

3

have the capability to store hundreds of thousands of pieces of information which includes various forms of communication via various applications and text messaging.

b. Digital camera: A digital camera is a camera that records pictures as digital image files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. This storage media can contain any digital data, including data unrelated to photographs or videos. Most digital cameras also include a screen for viewing the stored images. Most modern cell phones have on-board digital cameras that have all of the foregoing abilities as well as the ability to record digital video files.

c. Internet: The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer or mobile device connected to the Internet, an individual user can make electronic contact with millions of other computer or mobile device users around the world. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14. Based on my training, experience, and observation of the device, I know that the SUBJECT DEVICE has abilities that allow it to serve as a mini handheld computer, electronic storage device, wireless telephone, digital camera, digital video recorder, portable media player, GPS navigation device, and to connect to the internet and access mobile applications. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, where the device has been, and what messages were sent to or from the device via text message, e-mail, or other internet-based messaging applications.

15. Computers, mobile devices and the Internet have revolutionized the ways in which those with a sexual interest in children interact with each other and with children they seek to exploit. These new technologies have provided ever-changing methods for exchanging child pornography and communicating with minors. Digital technology and the Internet serve four functions in connection with child pornography and child exploitation: production,

4

communication, distribution, and storage.

      16.     A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications. Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto smartphones and other mobile computing devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game. Examples of such "apps" include KIK messenger service, Snapchat, and Instagram. According to the Snap Law Enforcement Guide, "Snapchat is a mobile application made by Snap Inc. ("Snap") and available through the iPhone App Store and Google Play Store. The Snapchat app provides users a way to share moments with photos, videos, and chats."

      17.     Internet-based communication structures, such as email and chat applications such as Snapchat, are ideal for those seeking to find others who share a sexual interest in children and child pornography, or seeking to exploit children online. Having both open as well as anonymous communication capability allows the user to locate others of similar inclination and still maintain their anonymity. Once contact has been established, it is then possible to send messages and graphic images to vulnerable children who may not be aware of the user's true identity. Moreover, individuals seeking to exploit children need not use large service providers, and can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with children. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

      18.     It is often possible to recover digital or electronic files, or remnants of such files, months or even years after they have been downloaded onto a hard drive or other digital device, deleted, or viewed via the Internet. Such files can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or even years later using readily available forensic tools. When a person "deletes" a file from a digital device, the data contained in the files does not actually disappear; rather the data remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, space on a storage medium that is not allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      19.     Similarly, files that have been viewed via the Internet are automatically

downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

      20.    As is the case with most digital technology, communications by way of computer or mobile devices can be saved or stored on the computer or mobile device used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or mobile device, or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

      21.    Criminals can mislabel or hide files and directories, encode communications, attempt to delete files to evade detection, or take other steps to frustrate law enforcement searches. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## V.    SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER AND MOBILE COMPUTING SYSTEMS

      22.    Searches and seizures of evidence from computers and mobile computing devices commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

          a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires

searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored; and

    b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

23. In order to fully retrieve data from a computer system, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

## VI.   SEARCH METHODOLOGY TO BE EMPLOYED

    24.    The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a. Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items listed in Attachment A;

    b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items in Attachment A;

    c. surveying various files, directories and the individual files they contain;

    d. opening files in order to determine their contents;

    e. scanning storage areas;

    f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are

7

likely to appear in the evidence described in Attachment A; and/or

g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## VII. INVESTIGATION AND PROBABLE CAUSE

25.     On March 4, 2020, at approximately 4:20 a.m., Belmont County Deputy Sheriff Sergeant DeVaul, while on routine patrol, discovered a white vehicle bearing West Virginia license plate 2VR855 in the parking lot of the Ohio Valley Mall, located at 67800 Mall Ring Road, St. Clairsville, OH. Sergeant DeVaul observed the windows of the vehicle were fogged up and that it was occupied by two individuals, one of whom he could tell was a female.

26.     Sergeant DeVaul approached the vehicle and made contact with the occupants. Upon approaching the driver's side of the vehicle, he spoke with a male subject who was identified as Cayceallan SCHNEIDER. While speaking with SCHNEIDER, Sergeant DeVaul was able to observe that the female in the passenger seat was obviously a minor. Sergeant DeVaul inquired of the girl's identity, and she provided her name and claimed to be 15 years of age. She admitted that her parents did not know that she had left the house, but refused to answer any further questions.

27.     Sergeant DeVaul asked both individuals to exit the vehicle. Upon further questioning the minor female (hereinafter Jane Doe), revealed that she was thirteen years old, with a birthdate in August of 2006, and had met Schneider using the social media application Snap Chat. They had used Snap Chat to set up a meeting for March 4, at which time Jane Doe left her house without her parents' knowledge. After SCHNEIDER picked up Jane Doe, they had engaged in sexual activity in his vehicle while parked at a location in Belmont County. Specifically, Jane Doe performed oral sex on Schneider. Jane Doe further stated that SCHNEIDER had been forceful with her during the sex acts, including grabbing her neck and forcing her head down.

28.     During an on-scene interview, SCHNEIDER also admitted to engaging in sex acts with Jane Doe and claimed that he believed that she was 15 years old. After Jane Doe's true age was revealed, SCHNEIDER was arrested and transported to the Belmont County Sheriff's Office. During a subsequent recorded interview, SCHNEIDER was advised of his constitutional rights and agreed to waive those rights and be interviewed by law enforcement. During this interview,

8

Schneider confirmed that he had met Jane Doe using Snap Chat and had communicated with her via the app to set up a meeting on March 4, 2020. SCHNEIDER also confirmed engaging in sexual activity with Jane Doe, who he then claimed to believe was fourteen years old. SHNEIDER also admitted he had used Snapchat to communicate with other females under the age of eighteen, and that he had met with Jane Doe on one prior occasion during which she performed oral sex on him in his vehicle in a parking lot in St. Clairsville.

29.     SCHNEIDER was found to be in possession of the SUBJECT DEVICE, and he provided consent for Detective Cruse to review it. Detective Cruse conducted a preliminary review of the Snapchat application on the SUBJECT DEVICE and observed an exchange of messages between Jane Doe and SCHNEIDER on Snapchat. The following are excerpts from their communication:

- o     "If we hang tonight can I give you head [oral sex]."
- o     Schneider: "Fuck ya." "LOL" "Can I eat you out [perform oral sex]."
- o     "I'm on my period." "Can't."
- o     Schneider: "Ugh I wanna eat some pussy and I wanna eat yours why do I never get to :("

30.     SCHNEIDER's Snapchat username was observed to be "mistake2118". Further identification of SCHNEIDER revealed that he was born in December of 1999 and was 20 years of age at the time that he engaged in sexual activity with Jane Doe. SCHNEIDER maintained a residence at          Wheeling, West Virginia, as confirmed by his a valid West Virginia Driver's license. SCHNEIDER travelled from his residence in West Virginia to Belmont County, Ohio where he engaged in sexual activity with Jane Doe.

31.     The SUBJECT DEVICE has remained in the secure evidence storage of the Belmont County Sheriff's Office since it was seized from SCHNEIDER. Other than the limited consensual review described above, the SUBJECT DEVICE has not been forensically examined by law enforcement.

9

## VIII. CONCLUSION

32.     Based on the forgoing factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2422(b) and 2423(b) have been committed, and evidence of those violations is located on the SUBJECT DEVICE. Your affiant respectfully requests that the Court issue a search warrant authorizing the search of the SUBJECT DEVICE and the seizure of the items described in Attachment A.

Andrew D. McCabe
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _18_ day of March, 2020.

Chelsey M. Vascura
United States Magistrate Judge
United States District Court, Southern District of Ohio

10

## ATTACHMENT A

### LIST OF ITEMS TO BE SEIZED

**I. Information to be seized by the government**

The following materials which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2422(b) - coercion and enticement, and 2423(b) – the travel with intent to engage in illicit sexual conduct:

1. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, communications or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

2. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs, text or other electronic messages, and other digital data files) concerning communications between Cayceallan SCHNEIDER and any other individuals related to the sexual abuse or exploitation of minors.

3. Any and all files, documents, records, or correspondence, in any format or medium (including, but not limited to, network, system, security, and user logs, databases, software registrations, data and meta data), that concern user attribution information.

4. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

5. Any and all digital diaries, notebooks, notes, and any other records reflecting personal contact, sexual activity, and/or any other activities with minors visually depicted while engaged in sexually explicit conduct.

6. Evidence of Schneider's location and travel in interstate commerce during the time period of any communications with any minors regarding engaging in sexual activity.

11

## ATTACHMENT B
## DESCRIPTION OF ITEMS TO BE SEARCHED

1) One black Samsung Galaxy J7 cellular phone bearing serial number serial number R58K65KA2YH, and IMEI 354805091157010.

The above item was seized from Cayceallan SCHNEIDER's person and is currently being held in secure evidence storage at the FBI, Cincinnati Field Office, Columbus Resident Agency, 425 West Nationwide Boulevard, Columbus, Ohio.

12